FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA    99 MAR 18  PM 3: 29
JASPER DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

RONNIE DAVIS, as father and
next friend of CRYSTAL DAVIS,

    Plaintiff,

vs.                                                                CASE NO. CV-96-J-1913-J

CHRYSLER CORPORATION,
et al.,

    Defendants.

ENTERED

MAR 18 1999

## MEMORANDUM OPINION

Currently pending before the court is the defendants-motion for summary judgment (doc. 59), to which the plaintiff filed a response thereto ("plaintiff's response"). Thereafter, the defendants filed a reply to plaintiff's response. Neither party has requested oral argument.

### I. Procedural History

Plaintiff, in the amended complaint filed April 28, 1997, states four causes of action against defendants:1) products liability (which is a claim under the Alabama Extended Manufacturer's Liability Act(AEMLD)); 2) breach of warranty; 3) failure to warn; and 4) negligence - wantonness. Upon consideration of the pleadings, briefs, and evidentiary submissions, the court concludes that the motion for summary judgment is due to be granted in part and denied in part.

## II. Factual Background

In the light most favorable to the plaintiff, the facts of this case are as follows: This case arises out of an automobile accident which occurred on September 29, 1995, in which Crystal Davis was killed. (Plaintiff's undisputed facts, no.1; defendant's motion for summary judgment at 1.) Plaintiff was the owner of the car, but was a passenger at the time of the accident. (Plaintiff's undisputed facts, no. 5; defendant's motion for summary judgment at 1.) The car was driven by John Sahagun. (Plaintiff's undisputed facts, no. 5). Mr. Sahagun traveled through a red light and struck another car. (Plaintiff's undisputed facts, no. 6; defendants' memorandum brief in support of motion for summary judgment ("defendant's memo") at 1. The decedent's fatal injuries included a lacerated liver and a closed head injury. (Defendants' memo at 2).

The plaintiff's car, a 1992 Plymouth Laser, was equipped with two-point motorized shoulder belts (automatic belts) with manual lap belts. (Plaintiff's undisputed facts, no. 8; defendant's motion for summary judgment at 4 defendants' memo at 2). At the time of the accident, the decedent and the driver were wearing the shoulder belts, but not the lap belts. (Plaintiff's undisputed facts, no. 9; defendants' memo at 3). This seat belt system was one of the options specifically permitted under Federal Motor Vehicle Safety Standard 208 ("FMVSS 208"), 49 C.F.R. § 571.208. (Defendants' motion for summary judgment at 5). This is referred to as "option 2" under FMVSS 208, which requires "passive protection for

2

frontal crashes (for example, automatic shoulder belts or air bags) plus manual lap belts for lateral crashed and rollovers."[1] (Plaintiff's response at 5.)

The plaintiff alleges that as used in the 1992 Plymouth Laser, this system is defective. (Plaintiff's response at 5, 6).[2] The defendants state that the decedent knew the lap belt was to be worn in conjunction with the automatic shoulder belt . (Defendants' memo at 2). The defendants also state that the vehicle was equipped with a variety of seat belt warnings, including a dashboard light, a buzzer, warning labels on both visors, and window stickers on the driver's and passenger's side windows. (Memo. Of defendants at 2). However, the plaintiff's argument is centered on its claim that the improper design of the shoulder belt applied the belt load to the abdominal region of the decedent and that the decedent therefore suffered a fatal liver laceration. In dispute is whether the plaintiff was wearing the shoulder belt properly. (Plaintiff's response at 11, n. 9; exhibit C to defendants' memo.)

---

[1] The plaintiff makes the argument that in *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 768 (11th Cir. 1998), the Eleventh Circuit ruled, as a matter of law, that the lap belt is for rollovers and lateral crashes. However, from reading that case, this court finds that the Eleventh Circuit was quoting *Perry v. Mercedes Benz of North America*, 957 F.2d 1257 (5th Cir.1992), which was in turn quoting *Kitts v. General Motor Corp.*, 875 F.2d 787, 788, n.2 (10th Cir.1989), which stated, in relevant part, that "a manufacturer could comply with FMVSS 208 by installing (1) a complete passive protection system for front and lateral crashes; (2) passive protection for frontal crashes plus lap belts with belt warnings for side crashes and rollovers; or (3) manual lap and shoulder belts with belt warning. 49 C.F.R. § 571.208 S4.1.2 (1987)." This court finds that the Eleventh Circuit did not state that lap belts, as a matter of law, are only for rollovers and lateral crashes.

[2] Although one of plaintiff's alternative designs includes the use of an air bag, by order dated July 9, 1998, the Hon. Sam Pointer ruled in this case that the plaintiff was prevented from arguing that "Chrysler should have chosen some other, safer, passenger restraint system (such as a three point passive seatbelt system or an air bag system) over a two-point seatbelt system.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical

doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coates & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id*. at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D.Ala.); citing *Anderson*, 47 U.S. at 251-252.

5

## IV. Discussion

The plaintiff contends that defendants incorporated a defective automatic belt in the 1992 Laser. The plaintiff alleges that the defendants should modify this system, incorporate the automatic shoulder belt in the Chrysler RSV developed in the 1970's and add air bags. (Plaintiff's response at 7). The plaintiff is precluded from arguing any system is a reasonable alternative which incorporates air bags. *See* note 2, *supra*.

However, beyond the limitations already placed on the plaintiff pursuant to the July, 1998 order, *Irving v. Mazda Motor Corp.,* 136 F.3d 764 (11th Cir. 1998), does not preempt plaintiff from alleging in this case that the particular restraint system installed in the 1992 Laser, was unsafe and that a reasonable, safer alternative existed within option two of FMVSS 208.[3]

### A. The AEMLD claims

The AEMLD is a state claim, thus this court must look to Alabama law. The Supreme Court of Alabama has stated that;

> Under the AEMLD, a manufacturer has the duty to design and manufacture a product that is reasonably safe for its intended purpose and use. However, the manufacturer of a product is not as insurer against all harm that may be caused by the use of a product, and the manufacturer or designer is not obligated to

---

[3]While the plaintiff argues that the court addressed "the air bag issue" in its order of October 1, 1998, this court finds that all that order did was deny, in whole, the defendants' motion to strike without stating any reasons or logic. This court declines to find that the court overruled its early, July 1998 bar on air bags with no explanation. The court, on October 1, 1998, stated only that the "the Defendants' Motion to Strike the plaintiff's supplemental Rule 26 expert reports ... is ... DENIED."

> produce an accident-proof or injury-proof product. Likewise, the failure of a product does not presuppose the existence of a defect. Proof of an accident and injury is not in itself sufficient to establish liability under the AEMLD; a defect in the product must be affirmatively shown (citations omitted).

*Townsend v. General Motors Corp.*, 642 So.2d 411, 415 (Ala. 1994). In *Irving v. Mazda Motor Corp.*, the court specifically addressed whether federal law could preempt a claim such as the one before this court under the AEMLD. In that case, the Eleventh Circuit stated that FMVSS directly addresses the kinds of restrain systems permitted to be used by car manufacturers. The court found "That Congress specifically intended the standard to give manufacturers a choice should preempt common-law claims that two-point passive shoulder belts, paired with manual lap belts, constitute inherently a design defect. *Irving*, 136 F.3d 764, 768 (11th Cir.1998). However, that court added by footnote that "[i]f a claim was asserted that two-point systems (such as that installed in the Mazda MX-6) were not defective in general, but that the specific design selected by Mazda for its two-point system was unreasonably dangerous, preemption would be less clear. *Irving,* 136 F.3d 768, n. 4. This appears to be the argument plaintiff here is now making.

In contrast, the plaintiff's claim that air bags are necessary for a reasonably safer alternative ignores that Congress specifically made a decision that alternatives not involving air bags were acceptable as well. As the Alabama Supreme Court quoted, "All of these arguments have been presented to Congress and the Department of Transportation and yet the Department has specifically chosen not to make air bags mandatory .... Congress has

chosen to give manufacturers a choice of occupant restraint systems. A court decision creating common law liability for the failure to install air bags 'will effectively force automobile manufacturers to choose the air bag option over other statutorily approved options .... A court decision that removes the element of choice authorized in the occupant crash safety regulations will frustrate the statutory scheme.'" *Schwartz v. Volvo North America Corporation*, 554 So.2d 927, 930-931 (Ala. 1989); quoting *Baird v. General Motors Corp*. 654 F.Supp. 28, 32 (N.D.Ohio 1986), *Wickstrom v. Maplewood Toyota, Inc.*, 416 N.W.2d 838, 841 (Minn.App.1987) *cert. denied*, 487 U.S. 1236, 108 S.Ct. 2905, 1001 L.Ed.2d 937 (1988). *See also Perry v. Mercedes Benz*, 957 F.2d 1257, 1263 (5th Cir. 1992); citing *Taylor v. General Motors Corp.*, 875 F.2d 816, 827 (11th Cir. 1989)("[A] state common law rule cannot take away the flexibility provided by a federal regulation, and cannot prohibit the exercise of a federally granted option" thus the state claim is preempted because it would " remove the element of choice authorized in Safety Standard 208..."

Additionally, the Alabama Supreme Court has stated that, to show that an allegedly dangerous product is defective, a plaintiff must show that "the product does not meet the reasonable expectations of an ordinary consumer as to its safety" and that "a safer, practical, alternative design was available to the manufacturer at the time it manufactured the product." *Elliot v. Brunswick Corp.*, 903 F.2d 1505, 1507 (11th Cir.1990). Under the AEMLD, a product is defective when it is used as it was intended to be used and is dangerous, but the defect can be obviated by adequate warning. *Yarborough v. Sears, Roebuck & Company*,

628 So.2d 478, 481 (Ala.1993). However, the mere fact that someone was injured while using the product does not establish that the product was unreasonably dangerous when put to its intended use.[4] *Yarborough,* 628 So.2d at 481.

The plaintiff alleges, and has put forth evidence through expert testimony, that a safer alternative design was feasible at the time the vehicle in question was manufactured.[5] (Plaintiff's response at 10, 12.) The defendants allege that the restrain system in this vehicle was not unsafe, and that the decedent knew she should wear the lap belt in conjunction with the shoulder belt. (Defendants' memo at 9, 12.) The court finds that a genuine issue of material fact exists on the plaintiff's AEMLD claim.

In consideration of all of the foregoing, this court finds that the defendants' motion for summary judgment on the plaintiff's AEMLD claim is due to be granted in part and denied in part. It is therefore **ORDERED** by the court that the defendants' motion for

---

[4] However, evidence of a safer, practical, alternative design also includes a showing that "the plaintiffs' injuries would have been eliminated or in some way reduced by the use of the alternative design. *Townsend,* 642 So.2d at 418. This is exactly what plaintiff is alleging, that the decedent's injuries would have been nonexistent or less severe if her shoulder belt had not allegedly loosened at the time of the accident. While the court is cognizant that the defendants allege that the decedent had intentionally placed the shoulder belt under her arm, this is a matter very much in dispute and therefore not appropriate for summary judgment.

[5] While the defendants also argue that the plaintiff failed to establish a safer, practical alternative (defendants' memo at 16), this court finds from reading the plaintiff's expert's deposition that the expert stated specific cars which already have the modifications he thought would increase the safety of the car in question here. *See e.g.*, depo. of Steve Syson at 193, 196, 217. The plaintiff's expert further stated that "I can say that every feature that I would like to see in either a two-point or a three-point passive system existed as of 1992, and many of them existed as of the 1950s. They were in mass production here in the United States in '59 or'60. So every piece of hardware that I believe should be included in the system is tried and proven and readily available." Depo. of Syson at 216.

summary judgment is **GRANTED** to the extent that the plaintiff is **PRECLUDED** from arguing that the defendants' design was defective for its failure to incorporate air bags. The balance of the defendants' motion on this court is **DENIED** as this court finds that federal preemption stops short of plaintiff's argument that the specific two point system used in the 1992 Laser was not a reasonably safe design.[6]

### B. The Breach of Warranty Claim

The plaintiff also alleges that the defendants expressly and /or impliedly warranted that the vehicle was fit and suitable for the purposes for which it was intended to be used, but in fact was, at the time of its manufacture, sale and/or distribution, in a dangerously defective and unsafe condition. (Amended Complaint at 8.) The defendants argue that this claim is subsumed under the AEMLD claim. (Defendants' memo at 13.) However, whether the seat belt, as designed, installed, manufactured and used in the vehicle in question was unreasonably dangerous is the exact question presented under the AEMLD claim. While plaintiff attempts to distinguish this claim from those presented to the court in *Yarborough v. Sears, Roebuck & Co.*, this court finds that case instructive. In *Yarborough*, the Alabama Supreme Court stated that the plaintiff's:

> claim of a breach of the implied warranty of merchantability is to the effect that the kerosene heater was unreasonably dangerous and therefore could not

---

[6]The court is aware that the defendants argue that the plaintiff was not properly wearing the shoulder harness and had hooked the same under her right arm. (Exhibit C to defendants' memo.) This court specifically finds that this is a genuine issue of material fact for a jury to decide.

be merchantable. 'Such an argument ignores the clear distinction between causes of action arising under tort law and those arising under the U.C.C. as adopted in Alabama.' *Shell v. Union Oil Co.*, 489 So.2d 569, 571. (Ala.1986). Whether the kerosene heater was unreasonably dangerous is not a question properly addressed in a claim alleging breach of warranty under the U.C.C., but it could be, and was, properly raised in a claim under the AEMLD.

*Yarborough*, 628 So.2d at 483. *See also Geohagan v. General Motors Corporation*, 279 So.2d 436 (1973)("no contractual cause of action for wrongful death is created by our Uniform Commercial Code arising from breach of warranty, and that actions for wrongful death can arise in this state and be processed only under our wrongful death statute").

Plaintiff cites *Ex parte Morrison's Cafeteria of Montgomery, Inc.* to support its contention that "'merchantable' focuses on the 'expectations of the ordinary consumer...' What a consumer is reasonably justified in expecting is a question for the jury." 431 So.2d 975 (Ala.1983). However, that case specifically dealt with the question of whether a food product is defective, and what is reasonably expected by the consumer in the food as served. *Ex parte Morrison,* 431 So. 2d at 977. That case is inapplicable to the facts before this court. The plaintiff here is suing for the wrongful death of his daughter. Under Alabama law, plaintiff has no cause of action for breach of warranty.

In consideration of the foregoing, the defendants' motion on Count II of the plaintiff's amended complaint is due to be granted and the Court therefore **GRANTS** the same.

### C. The Failure to Warn Claim

Here, plaintiff does not argue that the warnings provided in the 1992 Laser did not meet the federal standards. Plaintiff also does not allege that the exact system in the Laser was acceptably safe but for the failure to warn. Rather, the plaintiff alleges that the defendants "failed to exercise reasonable care to make or cause the vehicle to be reasonably safe for the use and purpose for which it was intended; and negligently and/or wantonly failed warn and/or instruct the ultimate user of the vehicle of the danger of the inadequate seat belting; and negligently and/or wantonly failed to design, manufacture, assemble, distribute and/or sell the vehicle in a reasonably crashworthy condition to guard against the injuries and/or death sustained by the decedent." (Plaintiff's first amended and recast complaint at 9-10.)

In *Irving*, the court stated that while a failure to warn claim is usually separate and apart from a defective-design claim, the plaintiff there tied the two claims. 136 F.3d at 769. Similarly, here, the plaintiff alleges that the design is defective and therefore the defendants should have warned against this defect. However, plaintiff does not dispute that the warnings provided in any way failed to comply with the federal standards provided in FMVSS 208. *See* 49 C.F.R. § 571.208 at S7.3.

The Alabama Supreme Court has stated that a "negligent-failure-to-adequately-warn case cannot be submitted to a jury unless there is some evidence that the allegedly inadequate warning would have been read and heeded and would have kept the accident from

12

occurring." *Yarborough*, 628 So.2d at 482, citing *Gurley v. American Honda Motor Co.*, 505 So.2d 358, 361 (Ala.1987). In the facts before this court, the defendants has submitted the deposition testimony of the decedent's mother:

> Q. ... And when you saw [Crystal Davis] in it, did she have on the automatic shoulder belt and the lap belt just like you did?
> A. Yeah, she told me to put mine on.
> Q. Put on your lap belt?
> A. Uh-huh.
> Q. So, there's no doubt in your mind that Crystal knew the lap belt was there and knew that it was supposed to be worn?
> A. Yes, sir.

(Depo. of Cindy Davis at 9-10, submitted as Exhibit D to defendants' memo.) The plaintiff has failed to show that an additional warning, beyond those already provided by the defendants, would have alerted the decedent to an unknown danger. *See Gurley*, 505 So.2d at 361 ("Where a warning is necessary, the warning need only be reasonable under the circumstances and it need not be the best possible warning. There is no duty to warn of every potential danger ... but only a duty to warn of those dangers which the owner or user would not be aware of under the ... circumstances").

Furthermore, this court finds that in the July 9, 1998 order entered in this case, the court stated:

> At oral argument, plaintiff's counsel conceded that, given plaintiff's theory –
> that Ms. Davis was fatally injured because the passive shoulder belt that she
> was wearing slackened and slipped down her torso during the accident – no
> warning could have prevented the injury.

13

Based on a consideration of all of the foregoing, this court finds that the plaintiff's failure to warn claim is preempted by FMVSS 208. As such, the defendants' motion for summary judgment on this count of the complaint be and hereby is **GRANTED**.

### D. The Negligence – Wantonness Claim

The plaintiff also claims that the defendants negligently and/or wantonly assembled, designed, sold or manufactured "any component part of the vehicle in which the decedent was riding...." Amended complaint at 11. In *Veal v. Teleflex*, the Alabama Supreme Court stated that "Since the issue is whether [the defendant] designed and put into circulation a product unreasonably dangerous for use and since the unreasonableness of the danger must be determined by the potential available to the designer at the time of design, it is apparent that the strict liability and negligence claims merge." *Veal v. Teleflex, Inc.,* 586 So.2d 188, 190 (Ala.1991).[7] *See also Pitts v. Dow Chemical Co.*, 859 F.Supp. 543, 550 (M.D.Ala. 1994)("...negligence with respect to an unreasonably unsafe product – does not state a claim distinct from the AEMLD. Rather, the AEMLD is the sole cause of action for the charge of negligence ...").

Based on a consideration of the above, the court finds that the plaintiff is not entitled to maintain a negligence cause of action separate and apart from its AEMLD claim. As such,

---

[7]In *Veal*, the court further stated that, as the claim was brought under the AEMLD, the trial court did not err in refusing to charge the jury with regard to negligence and wantonness. 586 So.2d at 191.

defendants' motion for summary judgment on count VI of plaintiff's amended complaint be and hereby is **GRANTED**.

## IV. CONCLUSION

In consideration of all of the foregoing, the court is of the opinion that the defendants' motion is due to be granted in part and denied in part.

It is therefore **ORDERED** by the court that the defendants' motions for summary judgment on all counts of the amended complaint except for Count I be and hereby are **GRANTED**. Summary judgment is further **GRANTED** in favor of the defendants and against the plaintiff of the issue of air bags as a reasonably safer alternative. The remainder of defendants' motion for summary judgment be and hereby is **DENIED**.

**DONE** and **ORDERED** this the ___18___ day of March, 1999.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE